IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ANDREW J. SULAK, ET AL. § | |
| § | |
| V. § | ACTION NO. 4:09-CV-651-Y |
| § | |
| AMERICAN EUROCOPTER § | |
| CORPORATION and § | |
| EUROCOPTER, S.A.S. § | |

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO APPLY HAWAII LAW

Pending before the Court is Plaintiffs' Motion to Apply Hawaii Law (doc. 133), filed April 20, 2012. The Court GRANTS the motion in part and DENIES it in part.

I. BACKGROUND

In 2007, a helicopter piloted by William J. Sulak crashed in Hawaii, killing Sulak and three passengers and injuring the other three passengers. Sulak was a resident of Hawaii.[1] The helicopter involved in the accident was designed and manufactured by defendant Eurocopter, S.A.S. ("Eurocopter"), a French corporation. (Resp. App. 1-2.) Defendant American Eurocopter Corporation ("AEC"), a Delaware corporation with its principal place of business in Texas, bought the helicopter from Eurocopter as Eurocopter's distributor in the United States. (Resp. App. 2, 19.) AEC then sold the helicopter to Jan Leasing, a Nevada corporation. (Resp. App. 2, 20; Reply App. 15.) Heli-USA Airways, Inc. ("Heli-USA"), a Nevada corporation,[2] leased the helicopter from Jan

---

[1] Although Eurocopter argues that Sulak did not reside in Hawaii because he did not own or rent a home in Hawaii, Sulak lived in Hawaii and had chosen it as his domicile. *See* Restatement (Second) Conflict of Laws §§ 15-16 (1971). (Resp. 6; Mot. Br. 13; Mot. App. 10, 13, 43-44.)

[2] Although the helicopter was operated by Silverado Helicopters, Inc. ("Silverado"), Silverado does business as Heli-USA Airways, Inc. (Reply App. 30.)

Leasing and operated and maintained it in Hawaii. (Resp. App. 20; Reply App. 12-13, 15.) After the accident, the National Transportation Safety Board conducted an investigation and determined that mechanical failure combined with faulty maintenance was the cause of the crash.

Sulak's family ("the Sulaks") filed suit against AEC and Eurocopter for negligence, failure to warn, strict product liability, and breach of warranty. The Sulaks alleged that the causes of the crash were defects in flight-control components (which were designed, manufactured, and distributed by AEC and Eurocopter) and the failure to warn of such defects. (3$^d$ Am. Compl. 3-4.) The Sulaks filed their suit in a Hawaii state court, and AEC and Eurocopter removed it to a federal court in Hawaii based on diversity jurisdiction. The Hawaii federal court transferred the suit to this Court based on AEC's insufficient contacts with Hawaii. AEC and Eurocopter responded that the crash was caused by Heli-USA's negligence in its repair and maintenance of the helicopter. (Answer 8.) The Sulaks dismissed their claims against AEC, but a final judgment as to AEC has not been entered. See Fed. R. Civ. P. 54(b). The disposition of William Sulak's estate is pending in Hawaii, but the Sulaks reside in California.

Eurocopter filed a motion for summary judgment arguing that it is entitled to judgment as a matter of law. Before the Court can rule on Eurocopter's motion, it must determine whether the substantive law of Texas or of Hawaii applies to the parties' dispute. The Sulaks assert that there is a conflict between Texas and Hawaii law on the following issues: (1) the availability of third-party claims against Heli-USA and Heli-USA's employees; (2) joint-and-several liability; and (3) product-liability law, which includes the quantum of evidence needed to prove a product defect, the necessity of proof of the existence of a safer alternative design, comparative fault, and the admissibility of subsequent remedial measures. The Sulaks argue that Hawaii law applies, while Eurocopter argues

2

for Texas law.

## II. THE RESTATEMENT ON CONFLICT OF LAWS

Because the Court has jurisdiction over this suit based on federal diversity jurisdiction, the Court must apply Texas choice-of-law rules to determine whether Texas or Hawaii law governs the Sulaks' suit. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413-14 (5th Cir. 1995). Texas follows the most-significant-relationship test set out in the Second Restatement of Conflict of Laws ("the Restatement") to decide choice-of-law issues. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). Under this analysis, a single state's law need not govern all substantive issues; thus, each issue is considered separately, and the state law that has the most significant relationship to the issue is applied. *See Bain v. Honeywell Int'l, Inc.*, 257 F. Supp. 2d 872, 877 (E.D. Tex. 2002); 17A James Wm. Moore, *Moore's Federal Practice* § 124.31[4][a] (3d ed. 2012).

Wrongful-death claims are governed by section 175 of the Restatement:

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties **unless**, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state would be applied.

Restatement (Second) Conflict of Laws § 175 (1971) (emphasis added).[3] Section 6, which provides basic policy considerations and applies in every choice-of-law case, lists seven relevant factors a

---

[3] The parties argue section 145 is the appropriate section for the Court's choice-of-law analysis. However, section 175 indicates that it "applies to all actions to recover for a death that is claimed to have been tortiously caused . . . by conduct that is either intentional or negligent or for which the actor is responsible on the basis of strict liability." Restatement (Second) Conflict of Laws § 175 cmt. c; *see also Yelton v. PHI, Inc.*, 669 F.3d 577, 580 (5th Cir. 2012). The Sulaks bring such a case. However, many of the comments to section 175 refer to section 145; thus, to the extent section 175 relies on section 145, the Court will do likewise.

3

Court should consider: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *See* Restatement (Second) Conflict of Laws § 6(2) (1971). The law of the place of injury applies unless the policy considerations of section 6 show another forum has a more significant relationship with the issue. *Cf. Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003) (holding specific factors of section 145 are evaluated in light of section 6 policy considerations). These factors are considered qualitatively and not quantitatively. *See De Aguilar*, 47 F.3d at 1413.

### III. CHOICE-OF-LAW DETERMINATION

#### A. DISTINCTION BETWEEN PROCEDURE AND SUBSTANCE

In diversity cases, the applicable substantive law is determined by the usual choice-of-law principles stated above, but the procedural rules are the rules of the forum. *See Condit Chem. & Grain Co. v. Helena Chem. Corp.*, 789 F.2d 1101, 1102 (5th Cir. 1986). Thus, if an issue is procedural, there is no need to conduct a choice-of-law analysis. 17A James Wm. Moore, *Moore's Federal Practice* § 120.31[1][a][i] (3d ed. 2012). The determination of whether a particular procedural or evidentiary rule involves federal procedural law or state substantive law is a difficult one. *See Forrest v. Beloit Corp.*, 424 F.3d 344, 354 n.7 (3d Cir. 2005). Regarding procedural and evidentiary rules, the general rule is if a federal rule of procedure or evidence covers a disputed point, the federal rule is to be followed, even in diversity cases. *See Shady Grove Orthopedic*

*Assocs. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010) (plurality op.); *Sibbach v. Wilson & Co.*, 312 U.S. 1, 11-14 (1941); *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993); 19 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* §§ 4508, 4512 (2d ed. 1996).  Of course, if the federal rule exceeds statutory authorization or Congress's rulemaking power, the federal rule cannot apply.[4]  *See Shady Grove*, 130 S. Ct. at 1437, 1442.

1. Subsequent Remedial Measures

The Sulaks assert that Hawaii law regarding the admissibility of evidence of subsequent remedial measures should be applied to their claims.  (Reply 5.)  Eurocopter argues that this issue is purely procedural, mandating application of Federal Rule of Evidence 407 to admissibility of any subsequent remedial measures.  (Resp. 22.)  The Sulaks recognize that "the depth of this subject and the conflict among Circuits may warrant exhaustive briefing, [they] simply request that the court find at this point that to the extent the admissibility of subsequent remedial measures is influenced by state law, the Court apply Hawaii state law."  (Reply 5.)

Federal Rule of Evidence 407 does not allow admission of subsequent remedial measures to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction.  *See* Fed. R. Evid. 407.  The federal rule allows admission of such evidence, however, for impeachment or to prove ownership, control, or the feasibility of precautionary measures.  *See id.*  The Texas rule is the same as the federal rule.  *See* Tex. R. Evid. 407(a).  Hawaii also generally bars admission of subsequent remedial measures, but varies from the federal and Texas rules by allowing admission if "offered for another purpose, such as proving [a] dangerous defect in products

---

[4] No party here argues that any applicable rule exceeds statutory authorization or Congress's rulemaking authority.

5

liability cases." Haw. Rev. Stat. § 626-1, Rule 407.

The United States Court of Appeals for the Fifth Circuit has uniformly held that evidentiary rules are procedural; thus, mandating application of the federal rule versus a conflicting state rule. *See King v. Ill. Cent. R.R.*, 337 F.3d 550, 555-56 (5th Cir. 2003); *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993); *Grenada Steel Indus., Inc. v. Ala. Oxygen Co.*, 695 F.2d 883, 885 (5th Cir. 1983); *accord Forrest*, 424 F.3d at 354 n.7; *Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1277-78 (3d Cir. 1992); *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 468-72 (7th Cir. 1984); *Rioux v. Daniel Int'l Corp.*, 582 F. Supp. 620, 624 (D. Me. 1984). Further, the Restatement provides that "[t]he local law of the forum determines the admissibility of evidence." Restatement (Second) Conflict of Laws § 138 (1971).[5]

There are some erudite critiques of a bright-line application of the federal rules of evidence as purely procedural, especially in the context of Federal Rule of Evidence 407. *See, e.g.,* Daniel C. Holder, *First Circuit Application of the Federal Rules of Evidence in Diversity Jurisdiction: A Return to* Hanna *Analysis*, 1 Suffolk J. Trial & App. Advoc. 49, 61-64 (1995); Lev Dassin, Note, *Design Defects in the Rules Enabling Act: The Misapplication of Federal Rule of Evidence 407 to Strict Liability*, 65 N.Y.U. L. Rev. 736, 754-55, 760-62, 776-79, 781 (1990); *see also Moe v. Avions Marcel Dassault-Breguet Aviation*, 727 F.2d 917, 930-33 (10th Cir. 1984) (dictum). However, the Court is persuaded that although there are logical arguments supporting the application of state evidentiary law in the context of Rule 407, the federal rule applies as a matter of procedure in strict liability cases. *See Grenada Steel*, 695 F.2d at 885-88; Restatement (Second) Conflict of Laws § 138; *see also J.B.N. Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 341 (5th Cir. 1988) (holding federal

---

[5]As with most of the applicable sections of the Restatement, no party briefed § 138.

evidentiary rules applied to adverse presumption if business records not produced).

## 2. Impleader

Eurocopter has expressed its intention to implead Heli-USA under Federal Rule of Civil Procedure 14(a) as a third-party, responsible defendant.  The Sulaks argue that joinder of additional parties should be governed by Hawaii law and not Rule 14(a) because Hawaii law would prohibit Eurocopter from joining Heli-USA as a third-party defendant because it was Sulak's employer:

> The rights and remedies . . . granted [by Hawaii's workers' compensation laws] to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to . . . anyone . . . entitled to recover damages from the employer, at common law or otherwise, on account of the injury.

Haw. Rev. Stat. § 386-5.  Rule 14(a) would allow Eurocopter to join Heli-USA as a third-party defendant if it "is or **may** be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1) (emphasis added).  Under Texas law, Eurocopter may "designate" Heli-USA as a responsible third-party subject to an objection or a motion to strike the designation "on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage."  Tex. Civ. Prac. & Rem. Code Ann. § 33.004.

The Sulaks confuse a procedural point (impleading a third-party defendant) with a substantive one (liability for injury by a third-party defendant).  The manner in which Eurocopter seeks to implead a third-party defendant is a pure procedural inquiry, thus, mandating application of Rule 14(a).  *See Hooper v. Wolfe*, 396 F.3d 744, 749 n.4 (6th Cir. 2005); *Shetter v. Amerada Hess Corp.*, 14 F.3d 934, 937-38 (3d Cir. 1994); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Fed. Deposit Ins. Corp.*, 887 F. Supp. 262, 264 (D. Kan. 1995); *Tesch v. United States*, 546 F. Supp. 526, 529 (E.D. Penn. 1982); 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice*

7

*and Procedure* § 1446 (3d ed. 2010). Thus, any attempt to implead a third-party defendant is governed by Rule 14(a). *See* Restatement (Second) Conflict of Laws § 127 & cmt. a (1971) (providing application of forum's law to joinder).[6] Any subsequent argument that Heli-USA cannot be held liable for Sulak's death is a substantive question based on the facts and the applicable law. *See Powell, Inc. v. Abney*, 83 F.R.D. 482, 485-86 (S.D. Tex. 1979). That substantive question is not before the Court at this time because Heli-USA has not been impleaded by Eurocopter and because no party has subsequently moved to dismiss or moved for judgment as a matter of law regarding any claims that may be raised against Heli-USA. (Resp. 6, 8, 16-17; Reply 2-3.)

B. PRESENCE OF CONFLICT

The Sulaks also contend that a choice of law is necessary on the following issues: (1) the quantum of proof required to prove a product defect and (2) the necessity of evidence of the existence of a safer alternative design. Eurocopter does not assert that these issues are procedural; thus, the Court likewise assumes that they are substantive, requiring a choice of law if a conflict exists. Eurocopter argues that there is no conflict between Texas and Hawaii law on these issues. (Resp. 18-19, 21.) The Sulaks argue Hawaii law applies to these issues, while Eurocopter asserts that Texas law applies if a conflict is present. As Eurocopter points out, no party has asserted that French law should apply as the domicile of Eurocopter. (Resp. 8 n.1.)

In Texas, courts only undertake a choice-of-law analysis if there is a conflict of law that actually affects the outcome of an issue. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984). The party asserting a conflict with Texas substantive law must demonstrate the existence of a true conflict. *See Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex.

---

[6]Once again, the Court notes that no party recognized the applicability of section 127 of the Restatement.

8

App.—Houston [14th Dist.] 2004, no pet.).

### 1. Expert Testimony

In Hawaii, expert testimony is not always required to prove the existence of a product defect, and circumstantial evidence can be sufficient to prove the existence of a defect. *See Stewart v. Budget Rent-a-Car*, 470 P.2d 240, 243-44 (Haw. 1970). Whether such evidence is necessary is a fact-specific inquiry that will vary from case to case. *See id.* 243-44. To prove a product defect in Texas, expert testimony is required to prove a defect "where the defect involves technical matters beyond the general experience of the jury." *Kallassy v. Cirrus Design Corp.*, No. 3:04-CV-727-N, 2006 WL 1489248, at *3 (N.D. Tex. May 30, 2006) (Godbey, Dist. J.) (citing *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004) and *Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 93-94 (Tex. 1974)). Eurocopter contends that there is no conflict between Texas and Hawaii laws on this subject.

Again, the parties have failed to recognize the applicability of the Restatement. Even if a conflict exists between Hawaii law and Texas law regarding the necessity of expert testimony to prove a defect, section 135 states that "[t]he local law of the forum determines whether a party has introduced sufficient evidence to warrant a finding in his favor on an issue of fact." Restatement (Second) Conflict of Laws § 135.[7] Whether expert testimony is required to prove a defect goes to the quantum or sufficiency of evidence required. Thus, this question is governed by the law of the forum—Texas. *See, e.g., Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388 (7th Cir. 1994); *Bailey v. Chattem, Inc.*, 684 F.2d 386, 395 n.10 (6th Cir. 1982); *PPG Indus., Inc. v. Cent. Indus.*

---

[7]Section 135 contains exceptions to its application: integrated contracts, statute of frauds, privileges against the disclosure of confidential information, the burden of proof, and rebuttable presumptions. *See* Restatement (Second) Conflict of Laws § 135 cmt. a. None of these exceptions are applicable here.

*Maint., Inc.*, No. 05CV1193, 2006 WL 752982, at *4 (W.D. Pa. Mar. 22, 2006); *cf. Kallassy*, 2006 WL 1489248, at *3 (in diversity case, applying federal law to assess sufficiency of the evidence in relation to jury verdict but state law of the forum to determine kind of evidence necessary to support verdict).

### 2. Safer Alternative Design

In Texas, a product-liability plaintiff must prove there was a safer alternative design that would have prevented or significantly reduced the risk of injury.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a); *Hernandez v. Tokai Crop.*, 2 S.W.3d 251, 256 (Tex. 1999) (certified question). Hawaii law recognizes that the existence of a safer alternative design for a product is a factor that must be considered in determining whether a product is defective.  *See Tabieros v. Clark Equip. Co.*, 944 P.2d 1279, 1312-13 (Haw. 1997); *Wagatsuma v. Patch*, 879 P.2d 572, 583 (Haw. Ct. App. 1994).  Thus, both Texas and Hawaii require evidence of an alternative design to prove that the challenged design was defective.  Further and more importantly, section 135 of the Restatement requires Texas law to apply to the necessity of evidence of a safer alternative design.  *See* Restatement (Second) Conflict of Laws § 135.

### C. CHOICE OF LAW WHERE CONFLICT IS PRESENT

The Sulaks argue that a choice of law is necessary regarding joint-and-several liability and comparative fault.  Eurocopter agrees and asserts Texas law applies.  The Sulaks champion Hawaii's as the applicable law on these two issues.  The Sulaks summarize the conflicts as follows:

> Under Hawaii law, a defendant who commits a tort "relating to [an] aircraft accident" or "product liability tort" is subject to joint and several liability, with no threshold level of responsibility. Haw. Rev. Stat. § 663-10.9. However, under Texas law, only a defendant whose responsibility is greater tha[n] fifty percent is jointly and severally responsible for damages recoverable by the claimant. Tex. Civ. Prac.

> & Rem. Code [Ann.] § 33.013.
>
> . . . .
>
> Under Hawaii law, strict product liability cases are subject to a pure comparative negligence analysis, *Hao v. Owens-Illinois, Inc.*, 738 P.2d 416 (Haw. 1970), but under Texas law, a modified comparative negligence analysis is used and a claimant may not recover if his percentage of responsibility is greater than fifty percent. Tex. Civ. Prac. & Rem. Code [Ann.] § 33.001.

(Mot. Br. 4-5.) It is important to note that these areas of law implicate what damages are available to a prevailing plaintiff. As such, these issues are further governed by section 178 of the Restatement: "The law selected by application of the rule of § 175 determines the measure of damages in an action for wrongful death."[8] Restatement (Second) Conflict of Laws § 178 & cmt. a (1971); *see MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341-42 (6th Cir. 1997) (applying Restatement sections 6, 145, 175, and 178 to damages issue in wrongful-death action); *Curtis v. TransCor Am., LLC*, ___ F. Supp. 2d ____, 2012 WL 2524946, at *13 (N.D. Ill. June 28, 2012) (holding residence of parties, including beneficiaries, under sections 175 and 178 is "compelling factor" when considering damages in wrongful-death action).

---

[8]As with section 175, the parties failed to brief or even recognize the applicability of section 178.

1. Sections 175 and 178

As stated above, section 175 of the Restatement (and, thus, section 178) mainly relies on the "local law of the state where the injury occurred" to determine "the rights and liabilities of the parties." Restatement (Second) Conflict of Laws § 175. However, the law of another state may be applied if that state "has a more significant relationship [with respect to a particular issue] under the principles stated in § 6 to the occurrence and the parties." *Id.* The Restatement defines the place of injury as "the place where the force set in motion by the actor first takes effect on the person. This place is not necessarily that where the death occurs. Nor is it the place where the death results in pecuniary loss to the beneficiary named in the applicable death statute." Restatement (Second) Conflict of Laws § 175 cmt. b.

The Sulaks and Eurocopter agree that the injury occurred in Hawaii. (Mot. Br. 7-9; Resp. 9.) But Eurocopter argues that the "force set in motion" by Eurocopter allegedly causing the Sulaks' product-liability claims occurred in France as the place of design, manufacture, and from which the warnings were issued. (Resp. 9.) *See Norwood v. Raytheon Co.,*, 237 F.R.D. 581, 595 (W.D. Tex. 2006). Indeed, under Texas choice-of-law principles, the most important factor regarding damages issues is where the plaintiff is domiciled. *See Bain v. Honeywell Int'l, Inc.*, 257 F. Supp. 2d 872, 877-78 (E.D. Tex. 2002).

Because Sulak's death occurred in Hawaii and because he was domiciled in Hawaii at the time of the crash,[9] Hawaii law applies under the general rule unless another state has a more significant relationship to the damages issue. *See* Restatement (Second) Conflict of Laws §§ 175, 178 & cmt. b; *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1297-98 (11th Cir. 1999); *Bain*,

---

[9]The Sulaks are domiciled in California, but no party argues that California has the most significant relationship to the damages issues.

257 F. Supp. 2d at 878. "Whether there is such another state should be determined in the light of the choice-of-law principles stated in § 6." Restatement (Second) Conflict of Laws § 175 cmt. d. "The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and of the particular issue involved (see § 145, Comments *c-d*)." *Id.* Thus, unless another state has a more significant relationship to the damages issue than Hawaii does after scrutinizing the factors set out in sections 6 and 145, Hawaii law will apply.

2. Section 145

Before turning to section 6, the Court must identify the factors listed in section 145 as referenced in sections 175 and 178. *See MacDonald*, 110 F.3d at 341-46; Restatement (Second) Conflict of Laws § 175 cmt. d.

a. place of injury

The first factor is the place where the injury occurred. As stated above, the Sulaks and Eurocopter agree that the injury occurred in Hawaii. This factor generally "plays an important role in the selection of the state of the applicable law." Restatement (Second) Conflict of Laws § 145 cmt. e. This factor diminishes in importance if the place of injury is fortuitous. *See Perez v. Lockheed Corp. (In re Air Disaster at Ramstein Air Base, Ger.)*, 81 F.3d 570, 577 (5th Cir. 1996). Although the place of injury is frequently fortuitous in aeronautical crashes, the factor remains important here because the plane was operated and maintained in Hawaii and because Sulak lived and worked in Hawaii. *See, e.g., Bain*, 257 F. Supp. 2d at 878-79.

b. location of conduct causing injury

The second factor is the place where the conduct causing the injury occurred. Eurocopter argues that "as between Texas and Hawaii, only Texas is the focal point of Eurocopter's conduct at issue" even though the design, manufacture, and issuance of warnings occurred in France. (Resp. 9.) The Sulaks argue the conduct causing the product failure, negligence, and failure to warn occurred in France. (Mot. Br. 10.)

As the Sulaks recognize, any defects in the helicopter would have occurred where it was designed and manufactured: France. *See Perez*, 81 F.3d at 577 (holding strict-liability place of conduct is where product designed, manufactured, and entered commerce stream); *Sloss v. Gen. Motors Corp.*, No. 3:00-CV-1036-M, 2001 WL 1081303, at *4 (N.D. Tex. Sept. 12, 2001) (Lynn, Dist. J.) (holding products-liability place of conduct is where product designed). But the failure to warn would have arisen in Hawaii because that is where the helicopter was operated. *See In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 818-821 (E.D. Tex. 2002) (place where injury occurred regarding failure-to-warn claim in product-liability case was where product was used); *McGinnis v. Eli Lily & Co.*, 181 F. Supp. 2d 684, 690 (S.D. Tex. 2002) (rejecting argument that place of injury-causing conduct in failure-to-warn, product-liability claim was where decision to warn made and holding conduct occurred where product used); *accord Jones v. Brush Wellman, Inc.*, No. 1:00-CV-777, 2000 WL 33727733, at *4 (N.D. Ohio Sept. 13, 2000) (recognizing majority of courts hold failure to warn occurs at place where plaintiffs could have been warned regardless of where decision not to warn occurred). Further, Eurocopter's defense to suit is that Heli-USA negligently maintained the helicopter, which occurred in Hawaii. This factor, thus, points to the application of French and Hawaii law.

c. location of parties

Eurocopter was incorporated in France and its principal place of business also is in France. Sulak was domiciled in Hawaii at the time of the accident, and the Sulaks reside in California. This factor implicates the laws of France, Hawaii, and California. *See Curtis*, 2012 WL 2524946, at *13.

d. place of parties' relationship

The Sulaks argue that this factor "does not contribute to the analysis of choice of law because of its inapplicability to this case and to most air crash disasters." (Mot. Br. 15.) Likewise, Eurocopter states that "[t]here is no direct relationship between the Sulak plaintiffs and Eurocopter." (Resp. 10.) This factor is neutral. *See, e.g.,* John B. Austin, *A General Framework for Analyzing Choice-of-Law Problems in Air Crash Litigation*, 58 J. Air L. & Com. 909, 921-22 (1993).[10]

3. Section 6

Because the section 145 factors point to multiple forums (mainly Hawaii and France), the section 6 factors must be examined to qualitatively analyze the forums suggested by the more specific section 145 factors. *See Allison v. ITE Imperial Corp.*, 928 F.2d 137, 141 (5th Cir. 1991); *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1569 (11th Cir. 1990). In wrongful-death actions, the focus is mainly on balancing the competing interests of the policies of the forum and the policies of other interested states, i.e., the second and third factors listed in section 6(2) of the Restatement. *See Judge*, 908 F.2d at 1569.

---

[10]There is some authority that would seem to apply the law of Hawaii under this factor. *See MacDonald*, 110 F.3d at 344. But because the parties agree that this factor is neutral, the Court will not linger on this issue.

a.  relevant policies of Texas, Hawaii, and France
and basic policies underlying the damages issues

As noted above, no party has argued the applicability of French law to this case. The Court is not willing to research French law and its underlying policies regarding wrongful-death claims and available damages in the parties' stead.

Texas law prohibits recovery from a joint tortfeasor if that joint tortfeasor is found to have been only 50% or less at fault. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.013(b)(2). Hawaii does not have a percentage threshold to hold a joint tortfeasor responsible in "torts relating to aircraft accidents" or "strict and products liability torts." Haw. Rev. Stat. § 663-10.9(2)(D) & (E). As argued by Eurocopter, "Texas law seeks to balance the interest in protecting defendants from disproportionate liability against the interest in allowing full recovery for injured persons and has made a clear decision to protect defendants who are not more at fault than all other parties combined from disproportionate liability." (Resp. 12.) The Sulaks argue Hawaii has the greatest interest in applying its joint-and-several-liability law to this case. (Mot. Br. 17.) Indeed, "Hawaii has an interest in protecting those within its borders from injury from defective products imported into the state." *Jenkins v. Whittaker Corp.*, 785 F.2d 720, 725 (9th Cir. 1986).

The Court agrees with the Sulaks that Hawaii has a greater interest in seeing its damages policies enforced for an accident that occurred in Hawaii, killing a Hawaii resident, in a helicopter operated and maintained in Hawaii. *See MacDonald*, 110 F.3d at 344-46; *Bain*, 257 F. Supp. 2d at 878-79. This seems especially true where Texas law currently is involved in the choice-of-law analysis solely because it is the litigation forum.[11]

---

[11] Of course, before AEC's dismissal, Texas was connected to the case as a result of AEC's distribution of the helicopter from its principal place of business in Texas. The Sulaks dismissed their claims against AEC; thus, the Court has not considered AEC's contacts in its choice-of-law analysis.

Regarding comparative negligence, Texas provides that a claimant may not recover if his percentage of responsibility is greater than fifty percent while Hawaii subjects product-liability cases to a pure comparative-negligence analysis. As with joint-and-several liability, the Court concludes that Hawaii has a greater interest in seeing its comparative-negligence scheme applied under the facts of this case.

### b. protection of justified expectations

The Restatement explains the importance of this factor: "[I]t would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Restatement (Second) Conflict of Laws § 6 cmt. g. However, this factor is inapplicable "when the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied." *Id.* The Court concludes that this is such a case.

### c. needs of interstate and international systems

This factor should "seek to further harmonious relations between states and to facilitate commercial intercourse between them" and functions "to make the interstate and international systems work well." Restatement (Second) Conflict of Laws § 6 cmt. d; *see Sacks v. Four Seasons Hotel Ltd.*, No. 5:04-CV-073, 2006 WL 783441, at *17 (E.D. Tex. Mar. 24, 2006). This factor is neutral because application of either Texas's or Hawaii's damages law under the facts of this case will not enhance or hinder commercial comity. *See* Austin, *supra*, at 964-65.

17

### d. certainty, predictability, and uniformity of result

This Court is certainly more familiar with Texas law regarding comparative negligence and joint-and-several liability. Further, it would not be unpredictable that a Texas court would apply Texas law. However, this factor is of diminished importance because the parties likely did not "give advance thought to the legal consequences of their transactions." Restatement (Second) Conflict of Laws § 6 cmt. i.

### e. ease in determination of law to be applied

This factor is neutral because the Court could easily apply either Texas or Hawaii law.

### 4. Summary of Choice-of-Law Analysis to Damages Issues

This Court is bound to apply Texas's most-significant-relationship test to decide the present choice-of-law issue. Under this test, the Restatement directs that the Court is to rely on the law of the state where the injury occurred unless another state has a more significant relationship to the issue. *See* Restatement (Second) Conflict of Laws §§ 175 & cmt. d, 178. The parties agree the injury occurred in Hawaii. The section 145 factors point to the application of the law of Texas, Hawaii, or France. Application of section 6's important second and third factors to these forums reveals that Hawaii has the most qualitative relationship with the case. Under the Restatement, no other forum has a more significant relationship to the issues of joint-and-several liability and comparative negligence than Hawaii. Thus, sections 175 and 178 mandate that Hawaii law apply to these issues.

## IV. CONCLUSION

Many of the issues raised by the Sulaks in their motion are procedural issues that are governed by Texas law. The remaining two issues, comparative negligence and joint-and-several liability, are governed by Hawaii law based on the analyses explicated by sections 6, 145, 175, and 178 of the Restatement.

SIGNED October 3, 2012.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE